GEORGE H. WHITESIDE, APPELLANT, V. ADAMS EXPRESS COMPANY ET AL., APPELLEES.

FILED JUNE 13, 1911. No. 16,432.

1. **Bailment: Loss by Bailee: Liability.** An applicant for license to practice medicine in this state sent his diploma to the board of health with request that a license issue to him. The diploma was received by the secretaries, examined, passed upon favorably, and, as was their custom, placed in a mailing case, properly directed to the applicant, and delivered to the Adams Express Company, one of the leading and responsible express transportation companies in the state, having an office at Lincoln, the point of transmission, and at Superior, the place of delivery. The applicant had given no instructions as to the method of returning the diploma to him, nor had he furnished any postage or other funds to pay for its return. The method of transmission adopted by the secretaries for the return of the diploma to the applicant was the usual and customary method adopted by them for the return of diplomas to applicants for license. The mailing case was received by the applicant at the terminal point named in the directions indorsed thereon, but the diploma was not therein, and was lost. *Held*, That the selection of the carrier and the delivery of the diploma to it for return was not actionable negligence on the part of the secretaries rendering them personally liable in damages for the loss of the diploma.

2. **Damages: Instructions: Harmless Error.** In an action against an express company for damages for the loss of a medical diploma, the court properly instructed the jury, in substance, that,

if they found by a preponderance of the evidence the diploma was delivered to the express company for transmission and was not delivered to the consignee, their verdict should be for the plaintiff; but, if they did not so find, it should be for the defendants. By another instruction they were informed that, if they found in favor of the plaintiff, their verdict should be for an amount merely nominal, "five (5) cents only." The jury returned a general verdict in favor of the defendants. *Held*, That the latter instruction was erroneous, but, as the verdict was in favor of defendants, the erroneous instruction could work no prejudice to plaintiff.

3. **Evidence:** ADMISSIBILITY. In an action pending against an express company for the loss of a medical diploma delivered to it for transmission, one of the attorneys for the defendant company applied to the college which had issued the diploma for a duplicate copy to be furnished the plaintiff. The letter contained statements that the diploma had been lost in transmission, was of some value to its owner, etc. It was offered in evidence by plaintiff as an admission of the defendant company. *Held*, That it was properly excluded.

4. **Witnesses:** IMPEACHMENT: COLLATERAL ISSUE. The deposition of a witness offered to disprove a voluntary immaterial collateral statement of another witness in his deposition was properly excluded.

APPEAL from the district court for Douglas county: HOWARD KENNEDY, JUDGE. *Affirmed.*

*John O. Yeiser,* for appellant.

*Halleck F. Rose* and *Greene, Breckenridge & Matters,* contra.

REESE, C. J.

This action was instituted by plaintiff against the defendant, the Adams Express Company and the secretaries of the state board of health for damages alleged to have been sustained by plaintiff by reason of the loss of his medical diploma issued to him by Harvard college in the year 1882. Separate answers were filed by the secretaries and the express company. The secretaries, by their answer, admit plaintiff's graduation from Harvard college,

and that he received his diploma as alleged in his petition. The express company admits that plaintiff is a physician duly admitted to practice in this state, but denies all other allegations, except as to its own organization and existence. It is not deemed necessary to notice the pleadings further at this time. A jury trial was had, in which it was shown that plaintiff had such a diploma; that he made application to the secretaries for a license to practice medicine, and, as required by their rules, he sent his diploma to them; that they passed favorably upon his application, and, as they represent and allege, they delivered the diploma, inclosed in a case, to the express company, properly directed, for return to plaintiff at Superior, Nebraska. It was shown that the case was received by him at the office of destination; but, upon opening the same it was empty, and, if the diploma had been placed therein and delivered to the express company by the secretaries, it had been lost in transportation. It was never afterwards found, although extensive search was made by the express company and, to some extent, by the secretaries. If the testimony of plaintiff and the statement of the express agent at Superior, that the diploma alleged to have been lost was not in the roll or mailing case when delivered to plaintiff by the defendant company, are true, there must have been inexcusable negligence somewhere, either on the part of the company, or the members of the board of health, who assert that the diploma was inclosed within the mailing case at the time the same was delivered to the express company. Each defendant, the express company on one hand, and the board of secretaries on the other, sought to exonerate itself, though apparently working harmoniously, with the desire of placing the blame upon the other.

At the close of the testimony, the court, on motion of defendant secretaries, instructed the jury to return a verdict in their favor, which was done, to which plaintiff excepted, and which is now assigned for error. We are not prepared to say that this instruction should not have been

given.    Whatever the facts may have been, the evidence does not show sufficient want of care to render them personally liable.    In fact no want of care is shown.    It is true that they had no instruction from plaintiff to return the diploma to him by express, but he had furnished no postage for its return by mail, and it was the precautionary custom of the board to return diplomas as soon as examined in order to avoid their accumulation in the office and the danger of loss.    The express company was one of the leading responsible common carriers of the state, with offices in Lincoln and Superior, and it was not of itself negligence to entrust the paper to that company for transportation.    They (the secretaries) received no fee or other compensation for the custody or transmission of the diploma.    The manner of redelivery was not specified, no direction having been given upon that subject, and a compliance with the usages and customs of business at the place where the bailment was made and terminated would seem to be all that was required of them.    5 Cyc. 201.

As would naturally be expected, the defendant company denied having received the diploma, and sought to maintain this defense.    Plaintiff sought to show that the diploma was property of intrinsic value, and that the loss thereof was a real damage to him, while the defendant company sought to minimize that value.    It appeared that a certificate had been made by the college certifying that, on the date shown in the records corresponding with the date of the issuance of the diploma, such diploma, showing the graduation of plaintiff, had been issued.    Aside from the instruction directing the jury to return a verdict in favor of the secretaries, the court gave the following instructions to the jury:

No. 2. "You are instructed that if you find by a preponderance of all the evidence that the diploma in controversy was contained in the package which was delivered to the defendant, the Adams Express Company, on August 6, 1903, at the time of such delivery, then your verdict should be for the plaintiff and against the Adams

31

Express Company. If you do not so find, then your verdict should be for the defendants."

No. 3. "You are instructed that if you find for the plaintiff you may assess his recovery, under the pleadings and proof in this case, at an amount merely nominal, and that your verdict should be for five (5) cents only."

The verdict of the jury was a general finding for the defendants.

The last of the above instructions is sharply criticised, and we think with reason. There was some evidence showing that such a document in the possession of one who had earned it does have an actual intrinsic value. This would seem to be especially true since it is made clearly to appear that it is an inflexible rule of the college never to issue a duplicate under any condition. But we do not see that this instruction is before us for examination, for the reason that under the first of said instructions the jury found in favor of the defendants, which was, in effect, that the diploma was not lost by the express company, and therefore the question of its value and the amount of damages becomes an immaterial one.

The bill of exceptions is quite a volume and abounds in objections to offered evidence, rulings thereon, and exceptions to such rulings. The assignments of error filed in this court are that (1) the judgment is contrary to law; (2) it is contrary to the evidence; (3) is not sustained by the evidence; (4) the court erred in overruling the motion for a new trial; (5) error in instructing the jury to return a verdict for nominal damages; (6) in dismissing the case of each defendant; (7) "the court erred in each instance it sustained objections to evidence offered by defendant." The seventh assignment is too vague and indefinite to merit any attention here. Such has been the law of this state during its whole history. 1 Neb. Syn. Digest, p. 180 *et seq.* In the brief of plaintiff a page is headed "Assignment of Errors," in which the first, second, third, sixth and seventh of the assignments filed with the record are omitted, and the following added: (1) The

court erred in rejecting a letter by one of defendant's attorneys to the Harvard officers "in which was made certain admissions;" (2) in excluding evidence of one J. G. Green with reference to the use of diplomas for display and advertisement; (3 and 4) verdict not sustained by evidence and contrary to law; (5) in excluding testimony showing difficulty of compelling issuance of duplicate diploma. The giving of instructions to the jury is also assigned for error, but this doubtless refers to the same as the sixth assignment filed.

The letter referred to in the first above was written to the college by one of the attorneys for the express company seeking the issuance of a duplicate diploma. It was written after the suit was commenced, in which it is said the plaintiff had sued the company for $20,000, copying some of the averments of the petition, and stating that the diploma had been delivered to the company, and that plaintiff "claims he has never received it," that the attorney understood how such a diploma might be an asset to a practicing physician, that the company is asking for a duplicate, that it had a moral right to do so, etc. This letter was introduced as an admission of the fact of the delivery of the diploma to defendant for its transmission to plaintiff, its loss, and that it was of value. It was not written for the purpose of use on the trial, nor in any way giving direction to the procedure or influencing the action of plaintiff, nor was there any statement that the attorney had knowledge of the truth of what plaintiff claimed, nor was it made for the purpose of dispensing with formal proof of the facts claimed by plaintiff to exist. In 1 Greenleaf, Evidence (16th ed.) sec. 186, it is said that admissions made by an attorney must be distinct and formal, or such as are termed solemn admissions, made for the express purpose of alleviating the stringency of some rule of practice, or of dispensing with the formal proof of some fact at the trial. Other admissions which are mere matters of conversation with an attorney, though they relate to the facts in controversy, cannot be received in evi-

dence against his client. See, also, *Treadway v. S. C. & St. P. R. Co.*, 40 Ia. 526; Weeks, Attorneys at Law (2d ed.) sec. 223. It is difficult to conceive, on principle, any distinction between casual statements made to a third party orally, and such as are contained in a letter like the one presented, where the statement is incidentally made for the purpose of accomplishing a legitimate purpose, not a part of the real litigation. The letter was properly excluded.

As to the second ground, the deposition of one Dr. Charles M. Green, in charge of the college of medicine at Harvard, was taken, and the question of the value .of a diploma was presented to him when he was asked, in substance, if a diploma was of any value to a physician? In the course of his answer of some length he stated that some liked to display their diplomas in their offices, when he volunteered the remark (possibly to show his wisdom) : "In the west they do; but in this part of the world a man of any prominence would be ashamed to display his diploma in his office; would consider it a piece of poor taste." This would no doubt have been stricken out as an immaterial, voluntary statement displaying "poor taste;" but, instead of adopting that course, plaintiff took the deposition of Dr. Joseph G. Green, of Marblehead, Massachusetts, a city of near 40,000 population, for the purpose of disproving the statement of the other Green that such was not the practice in that part of the world. The witness interviewed a great number of physicians in Marblehead, and found that many of them *did* display their diplomas, giving the names and street number of those who exhibited the "poor taste" from the ill effects of which the other Green had exonerated them. This was a collateral question of no moment, and the court did right in refusing to admit the deposition in evidence. Had plaintiff objected to the "poor taste" part of the deposition of the other Green, his objection doubtless would have been sustained.

While to the mind of the writer the result of the trial was probably a miscarriage of justice, yet, no sufficient

foundation having been laid for a reversal of the judg-
ment, it must be affirmed, which is done.

AFFIRMED.